**No. 26-6792**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

Douglas Symmes, Jr.

Plaintiff - Appellant,

v.

North Carolina Department of Adult Correction, et al.

Defendants - Appellees.

On Appeal from the U.S. District Court
for the Eastern District of North Carolina
No. 5:26-CT-3004, Honorable Louise W. Flanagan

# OPENING BRIEF

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... ii

STATEMENT OF JURISDICTION .................... 1

STANDARD OF REVIEW .................... 1

STATEMENT OF THE ISSUES .................... 2

STATEMENT OF THE CASE .................... 2

SUMMARY OF THE ARGUMENT .................... 4

ARGUMENT .................... 6

I. Symmes's Allegations Stated a Claim Under the ADA. .................... 6

II. The District Court Erred in Dismissing the ADA Claim on Pre-Service Screening with No Leave to Amend. .................... 16

CONCLUSION .................... 26

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356 (4th Cir. 2008) .................13

*Adom v. California Department of Corrections & Rehabilitation*, No. 24-4756, 2026 WL 2639549 (9th Cir. Sept. 8, 2026).......................................12, 22

*Alexander v. Choate*, 469 U.S. 287 (1985) ..........................................................18

*Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999) ...............................17, 18

*Barker v. Osemwingie*, No. 20-15503, 2021 WL 5564625 (9th Cir. Nov. 29, 2021) ...........................................................................................................22

*Basta v. Novant Health Inc.*, 56 F.4th 307 (4th Cir. 2022) ....................................16

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012) ...................15

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020)..................................................19

*Boyd v. Tesemma*, No. 2:14-CV-196, 2016 WL 9211757 (E.D. Va. Jan. 12, 2016) ...........................................................................................................24

*Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996)..............................................19, 20

*Chisolm v. McManimon*, 275 F.3d 315 (3d Cir. 2001) ..........................................14

*Erickson v. Pardus*, 551 U.S. 89 (2007)....................................................................2

*Fauconier v. Clarke*, 966 F.3d 265 (4th Cir. 2020) ................................................17

*Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285 (3d Cir. 2019)............................21, 22

*Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620 (6th Cir. 2000) ...............12

*Goodman v. Johnson*, 524 F. App'x 887 (4th Cir. 2013).......................................19

*Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929 (N.D. Cal. 2015) .................13

*Hildreth v. Butler*, 960 F.3d 420 (7th Cir. 2020) ...................................................14

*J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663 (4th Cir. 2019) ...........................................................................................................16

*Koon v. North Carolina*, 50 F.4th 398 (4th Cir. 2022) ..............................15, 18, 24

*Koon v. North Carolina*, No. 5:16-CT-3301-FL, 2021 WL 1206579 (E.D.N.C. Mar. 30, 2021).........................................................................24

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)........................................12

*Magwood v. Patterson*, 561 U.S. 320 (2010)..........................................................20

*Morris v. California*, No. 21-16059, 2022 WL 2901730 (9th Cir. 2022) ...............22

*Munoz v. California Department of Corrections and Rehabilitation*, 842 F. App'x 59 (9th Cir. 2021) ....................................................................22

*Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016)...................7, 17

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) ........................................10

*Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999) ...............................................26

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) .......................7, 20, 21

*PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001).....................................................12

*Pierce v. District of Columbia*, 128 F. Supp. 3d 250 (D.D.C. 2015) ....................6, 7

*Rosen v. Montgomery County, Maryland*, 121 F.3d 154 (4th Cir. 1997) .................7

*Salinas v. Com. Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017)................................23

*Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333 (4th Cir. 2012) ...........................................................................................6, 7, 13

*Shaw v. Foreman*, 59 F.4th 121 (4th Cir. 2023).......................................................1

*Simmons v. Navajo County*, 609 F.3d 1011 (9th Cir. 2010) ..................................19

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) .............................................8

*Tennessee v. Lane*, 541 U.S. 509 (2004) .................................................................14

*Thomas v. Salvation Army S. Territory*, 841 F.3d 632 (4th Cir. 2016).....................1

*Thompson v. Pitt County Detention Center*, No. 4:19-CV-114-FL, 2020 WL 6196255 (E.D.N.C. Oct. 22, 2020) ...........................................................24

*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) ..........................................................................................................8

*United States v. Georgia*, 546 U.S. 151 (2006).......................................................21

*Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378 (4th Cir. 2008) .....................11

*Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067 (2018) ...........................20

*Womble v. Patel*, No. 5:26-CV-00053-MEO, 2026 WL 970247 (W.D.N.C. Apr. 9, 2026)....................................................................................24

*Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64 (2d Cir. 2016) ............................15

*Zelaya Sorto v. Doe*, No. 5:18-CT-3242-FL, 2020 WL 5709249 (E.D.N.C. Sept. 24, 2020) ...................................................................................24

**Statutes**

28 U.S.C. § 1291 ........ 1
28 U.S.C. § 1331 ........ 1
28 U.S.C. § 1915 ........ 1
29 U.S.C. § 794 ........ 13
42 U.S.C. § 1983 ........ 1
42 U.S.C. § 12102 ........ 10, 11
42 U.S.C. § 12112 ........ 6
42 U.S.C. § 12132 ........ 1, 6
42 U.S.C. § 12134 ........ 10
42 U.S.C. § 12205a ........ 12
ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 ........ 8, 9, 10

**Regulations**

28 C.F.R. § 35.108 ........ 10, 11, 12
28 C.F.R. § 35.150 ........ 14
28 C.F.R. Pt. 35, App. A ........ 13
28 C.F.R. Pt. 35, App. B ........ 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 1

## STATEMENT OF JURISDICTION

Douglas Symmes, Jr. invoked the district court's jurisdiction pursuant to 28 U.S.C. § 1331. He brought his complaint under 42 U.S.C. § 12132 and 42 U.S.C. § 1983. J.A. 1. This Court has jurisdiction under 28 U.S.C. § 1291. The district court dismissed the complaint without prejudice, did not grant leave to amend, and entered final judgment on July 9, 2026. J.A. 5–6. Symmes filed a timely notice of appeal which the district court docketed on July 17, 2026. J.A. 32.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), applying the same standard as under Rule 12(b)(6). *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016). A Court "should not dismiss a plaintiff's claim unless, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Shaw v. Foreman*, 59 F.4th 121, 126 (4th Cir. 2023) (cleaned up). "[W]hen an action implicates a civil rights interest, [the court] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Id.* This construal must be particularly

liberal here, as "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## STATEMENT OF THE ISSUES

I. Whether Symmes's allegations stated a claim under the ADA.

II. Whether the district court erred in dismissing Symmes's ADA claim without leave to amend on pre-service screening.

## STATEMENT OF THE CASE

Douglas Roy Symmes is incarcerated in the North Carolina Department of Adult Correction. He has nerve damage in his spine and neck that runs down both arms. J.A. 14. Writing for a page or more causes the nerve pain to get severe and overwhelming. *Id.* This pain does not abate; even after finishing writing, the pain remains for hours or even days. *Id.* He has various reasons requiring him to write. *Id.* These include personal matters, managing a workers' compensation dispute, and litigating his criminal case *pro se*. *Id.*

In November 2024, Symmes requested an accommodation for his inability to write. *Id.* He sought an electronic device that would allow him to type out his letters and then save them to edit and print out later. *Id.* He explained he needed the device to meet his court deadlines. *Id.* The prison's ADA coordinator responded "Denied, No electronic device will be provided." *Id.* The division ADA coordinator denied

the appeal, not allowing Symmes to have the device and telling him to speak with his case manager regarding programs on the prison's tablet system for this purpose. *Id.* No such programs exist. *Id.* This staff member was aware that no such programs exist. J.A. 21. Symmes filed an additional grievance and appeal, which Defendants similarly responded to inadequately. J.A. 14–15.

Symmes filed an ORAR stating that he has "C5–7 and T1 spine-neck and severe nerve damages that runs down both arms into [his] fingers." J.A. 15. The pain, he wrote, is overwhelming when he has to write a page or more for personal or legal matters. *Id.* A University of North Carolina Pain Management Specialist, Dr. Irina Phillips, recommended that he use an electronic device to type out correspondence on a device he is able to save and edit. *Id.* He explained that this was consistent with the prison system's regulations at Chapter E 2604 and would present no security or safety issue. *Id.* He explained even if he had to order it and pay for it himself, he would do so. *Id.*

The prison's ADA coordinator responded, "Denied, Denied for programs." *Id.* The case manager commented that Symmes could check his GTL tablet and see if there are any programs that assist with his needs. *Id.* One staff member denied his appeal and told him to speak with a case or unit manager, and the unit manager said in turn that the prison categorically does not provide this accommodation. *Id.*

Symmes filed a third grievance regarding the false response to his previous grievances, explaining that the GTL tablets had no relevant programs. *Id.*; J.A. 27–28. The grievance was denied, with staff writing that "prison staff have taken appropriate action" in the previous grievances with no explanation. J.A. 16. No prison official ever invoked safety, security, or the burden of Symmes's request. *Id.* Instead, they exclusively relied on the existence of an alternative that did not exist or simply stated conclusorily that the prison did not offer such an accommodation. *Id.*; J.A. 30.

The district court dismissed Symmes's entire complaint on pre-service frivolity review. J.A. 5. The court first recited the ADA's elements. J.A. 4–5. The entirety of the district court's analysis followed: "Even assuming plaintiff suffers from a qualifying disability, he does not state a claim under the ADA, because he has not alleged discrimination based on disability." J.A. 5. The court followed that sentence with three case citations and explanatory parentheticals. *Id.* The court did not grant leave to amend but rather directed the court clerk to close the case. *Id.*

Symmes timely appealed. J.A. 32.

## SUMMARY OF THE ARGUMENT

Symmes alleged a straightforward failure to accommodate his disability. Nerve damage makes handwriting a page or more severely painful, with the pain persisting for hours or days. He requested an electronic writing device so that he

could prepare personal correspondence and legal documents. Prison officials denied his requests and directed him to tablet programs that did not exist. Those allegations state a claim under Title II of the ADA.

Writing is expressly recognized as a major life activity, and the ADA's definition of disability must be construed broadly. Symmes's ability to write despite severe pain does not defeat his claim: meaningful access requires more than the physical ability to complete an activity at substantial personal cost. His allegations also support the reasonableness of an accommodation. He described a device without internet access, reported a specialist's recommendation, and offered to arrange for its purchase. Whether an effective accommodation would impose a legitimate security or administrative burden cannot be resolved against him on pre-service screening. His allegation that the division ADA coordinator knowingly directed him to nonexistent software also supports an inference of deliberate indifference.

The district court's reasons for dismissal do not address this theory. Title II prohibits a failure to make reasonable accommodations as well as disparate treatment. It does not require disability to be the sole cause of discrimination, and a plaintiff alleging a failure to accommodate need not show hostility toward people with disabilities. Nor is Symmes using the ADA to smuggle in medical malpractice claims. An electronic typing device would not treat his nerve pain but instead accommodate it.

This Court should reverse the dismissal of the ADA claim and remand for further proceedings. At a minimum, if the Court identifies a pleading deficiency, it should vacate the dismissal and direct the district court to allow amendment. Symmes received no opportunity to amend his initial *pro se* complaint, and the district court did not explain why amendment would be futile.

## ARGUMENT

### I. Symmes's Allegations Stated a Claim Under the ADA.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the statute, "discrimination" is not limited to instances of animus toward individuals with disabilities. Rather, it "includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333, 336 (4th Cir. 2012) (quoting 42 U.S.C. § 12112(b)(5)(A)); *see also, e.g.*, *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015) ("Section 504 and Title II mandate that entities act *affirmatively* to evaluate the programs and services they offer and to ensure that people with disabilities will have meaningful access to those services."). An accommodation "is reasonable if it is reasonable on its face or

used ordinarily or in the run of cases and will not cause undue hardship." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) (internal quotation marks and citation omitted).

The ADA "unmistakably includes State prisons and prisoners within its coverage," and encompasses the services offered by prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–11 (1998). Indeed, the "affirmative duty" to accommodate "is seemingly at its *apex* in the context of a prison facility, in light of the uneven power dynamic between prison officials and inmates that inherently and appropriately exists, and also the fact that departments of corrections have complete control over whether prison inmates (disabled or not) receive any programs or services at all." *Pierce*, 128 F. Supp. 3d at 269.

A public entity violates the ADA when it fails to provide a reasonable accommodation to disabled individuals "that will allow them the meaningful access" to which they are entitled. *Lamone*, 813 F.3d at 507–08; *Seremeth*, 673 F.3d at 336. A public entity may be liable under a direct theory of liability or on a secondary basis for the violations of its agents. *Rosen v. Montgomery County, Maryland*, 121 F.3d 154, 157 n.3 (4th Cir. 1997).

Symmes adequately alleged that he had a disability. Congress broadened the definition of disability in 2008. Following the enactment of the ADA, the Supreme Court in two decisions denied relief to ADA plaintiffs on the basis that they were

not sufficiently limited in their major life activities to qualify as actually disabled. First, in *Sutton v. United Air Lines, Inc.*, the Court held that two plaintiffs who suffered from severe myopia without corrective aids but had perfect vision with them did not qualify as disabled. 527 U.S. 471, 494 (1999). The Court based its holding in large part on its reading of "substantially limits" to "suggest[] 'considerable' or 'specified to a large degree.'" *Id.* at 491.

Three years later, in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, the Court denied relief to a plaintiff with carpal tunnel syndrome who worked in an automotive plant. 534 U.S. 184, 187 (2002). The lower court had held that the plaintiff's inability to do many manual tasks, including those required by her job, qualified as a substantial limitation on a major life activity. *Id.* at 192. The Court reversed, holding that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198.

Congress quickly made clear that it disagreed with the high bar the Supreme Court had imposed on qualifying disabilities under the ADA and sought to "restore the intent and protections of" the ADA through superseding legislation. Pub. L. No. 110-325, 122 Stat. 3553 (2008). In 2008, Congress responded to *Toyota Motor* and *Sutton* by passing the ADA Amendments Act (ADAAA), which amended the ADA

by broadening its definition of disability. *Id.* In the "Findings" section of the ADAAA, Congress made explicit that it was overruling the Court's decisions in *Toyota Motor* and *Sutton*:

> (4) the holdings of the Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and its companion cases have narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect;
> (5) the holding of the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) further narrowed the broad scope of protection intended to be afforded by the ADA;
> (6) as a result of these Supreme Court cases, lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities;
> (7) in particular, the Supreme Court, in the case of *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), interpreted the term "substantially limits" to require a greater degree of limitation than was intended by Congress….

*Id.* Congress further elaborated under the "Purposes" section of the Act that a primary aim was:

> (5) to convey congressional intent that the standard created by the Supreme Court in the case of *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) for "substantially limits", and applied by lower courts in numerous decisions, has created an inappropriately high level of limitation necessary to obtain coverage under the ADA, to convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.

*Id.* The ADAAA also established a rule of construction that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

The ADAAA further authorized the Attorney General to issue regulations implementing the definition of disability. *See* 42 U.S.C. §§ 12134, 12205a ; *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597–98 (1999) ("Because the Department [of Justice] is the agency directed by Congress to issue regulations implementing Title II [of the ADA], its views warrant respect."). These regulations reinforced the breadth of the Act's new definition of a qualifying disability: "The definition of 'disability' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 28 C.F.R. § 35.108(a)(2)(i). As for the word "major" in "major life activity," it is not to be "interpreted strictly to create a demanding standard"; rather, whether "an activity is a major life activity is not determined by reference to whether it is of central importance to daily life." 28 C.F.R. § 35.108(c)(2).

The regulation's rules of construction for the term "substantially limits" further detail how broadly courts should interpret a qualifying disability. "Substantially limits" was not intended to be a "demanding standard" but instead should be interpreted "broadly in favor of expansive coverage, to the maximum

extent permitted by the terms of the ADA." 28 C.F.R. § 35.108(d). The regulations make clear that the primary analysis under ADA claims should be "whether public entities have complied with their obligations and whether discrimination has occurred" rather than "the extent to which an individual's impairment substantially limits a major life activity." *Id.* An impairment constitutes a qualifying disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population," and it need not "prevent," or even "significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* No "extensive analysis" is necessary to resolve the "threshold issue of whether an impairment substantially limits a major life activity," and the evaluation "of an individual's performance of a major life activity" compared to the general population "usually will not require scientific, medical, or statistical evidence." *Id.*

Symmes alleged a substantial limitation on a major life activity: writing. While writing is plainly a "major life activity" from the lenient first principles described above, the ADA also expressly defines "performing manual tasks," i.e., doing tasks with the hands, as a major life activity. 42 U.S.C. § 12102(2)(A). This Court has, even under the pre-ADAAA standard, held that "performing manual tasks" covered "writing." *Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378, 387 n.2 (4th Cir. 2008). More directly, Title II's implementing regulations explicitly

define "writing" as a "major life activity." 28 C.F.R. § 35.108(c)(1)(i);[1] *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 626 (6th Cir. 2000) (explaining even before the adoption of the ADAAA that "courts have included reading and writing as major life activities under the ADA").

Symmes alleged that he had nerve damage in his neck and spine, running down both arms. J.A. 14. When he has to write a page or more, the pain becomes "overwhelming" and lasts for "hours or days." *Id.* Symmes is plainly limited in his ability to write "as compared to most people in the general population." 28 C.F.R. § 35.108(d)(1)(v).

Symmes also alleged that he lacked meaningful access to several services or activities provided by the public entity. The ADA is a "broad mandate" of "comprehensive character" and "sweeping purpose" intended "to eliminate discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). Though the ADA does not define the "services, programs, or activities of a public entity," the Rehabilitation Act of 1973 defines a "program or

[1] Courts have looked to Title II's implementing regulations to help determine the meaning of the statute even after the U.S. Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). *See Adom v. California Dep't of Corr. & Rehab*., No. 24-4756, 2026 WL 2639549, at *6 n.6 (9th Cir. Sept. 8, 2026). This is, in part, because the ADAAA explicitly authorized the Department of Justice to implement regulations detailing the definition of the term disability, so the Department was not merely filling gaps but rather was exercising explicit statutory authority on just this question. *See* 42 U.S.C. § 12205a.

activity" as "*all* of the operations of ... a local government." 29 U.S.C. § 794(b)(1)(A) (emphasis added). The Rehabilitation Act and the ADA are generally interpreted in tandem, and Congress has instructed courts that nothing in the ADA shall be construed to apply a lesser standard than the standards applied under § 504 of the Rehabilitation Act or the regulations issued by Federal agencies pursuant to that title. *See A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356, 362 (4th Cir. 2008). The Department of Justice has interpreted Title II to apply to "anything a public entity does." 28 C.F.R. Pt. 35, App. B (Section 35.102 Application), at 687 (2017). "[C]orrectional facilities are unique facilities under Title II," because "[disabled] [i]nmates cannot leave the facilities and must have their needs met by the corrections system." 28 C.F.R. Pt. 35, App. A; *id.* ("If the detention and correctional facilities fail to accommodate prisoners with disabilities, these individuals have little recourse, particularly when the need is great.").

As a result, virtually everything that happens inside a prison qualifies as a program, service, or activity. *See Seremeth*, 673 F.3d at 338 (noting the Supreme Court's "expansive interpretation" in defining program, services, or activities in the prison context); *see also Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 935–36 (N.D. Cal. 2015) ("Because of the unique nature of correctional facilities, in which jail staff control nearly all aspects of inmates' daily lives, most everything provided to inmates is a public service, program or activity").

Liberally construed, Symmes's complaint identifies correspondence and the preparation of legal documents as activities to which he lacked meaningful access. He described writing to personal contacts and courts, pursuing a workers' compensation case, and litigating matters concerning his criminal charges and prison conditions. J.A. 14–15, 17–18. The requested device would permit him to participate in those activities without the severe pain caused by handwriting. See *Hildreth v. Butler*, 960 F.3d 420, 430–31 (7th Cir. 2020) (evaluating an ADA claim concerning a prisoner's ability to draft legal documents and upholding alternative accommodations that included writing assistance and access to a library typewriter); *Chisolm v. McManimon*, 275 F.3d 315, 330–31 (3d Cir. 2001) (holding that an extradition hearing was a covered program and that factual disputes precluded summary judgment on whether a deaf detainee had adequate access).

Meaningful access requires more than being physically capable of accessing services when doing so risks injury and pain. A violation of Title II does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity. Services, programs, and activities must be "readily accessible." 28 C.F.R. § 35.150. For example, the U.S. Supreme Court's paradigmatic Title II case, *Tennessee v. Lane*, involved plaintiffs with mobility impairments who had to crawl or be carried up flights of stairs to reach the second floor of a courthouse. 541 U.S. 509, 513 (2004). No party suggested that the plaintiffs had meaningful access

to the courts even though they could physically reach them by risking injury and pain. This Court made that conclusion explicit in *Koon v. North Carolina*, explaining that "[i]f a prisoner without the use of his legs left his wheelchair at the bottom of the stairwell and crawled up to the library, no one would doubt it was a denial of meaningful access." *Id.* "The question is" not whether access was impossible but instead "whether the pain and challenge of accessing the [service] was such that it denied him *meaningful* access." *Id.* The ADA imposes a broader mandate for equality than mere possibility of access. *See Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134–35 (9th Cir. 2012) (rejecting defendant's argument that it must only provide "necessary" accommodations as that "would require very few accommodations indeed. After all, a paraplegic can enter a courthouse by dragging himself up the front steps, so lifts and ramps would not be 'necessary' … And no facility would be required to provide wheelchair-accessible doors or bathrooms, because disabled individuals could be carried in litters or on the backs of their friends. That's not the world we live in.").

Symmes plausibly alleged that prison officials failed to provide a reasonable accommodation. Like many reasonableness determinations, whether Defendants acted reasonably in accommodating a disability is a "fact-intensive" inquiry that "is best left to a jury, who can weigh the competing evidence and make credibility determinations." *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663,

675 (4th Cir. 2019). This is not the rare case in which a requested accommodation is so unreasonable that it would flunk this undemanding standard at such an early stage. Symmes sought an electronic device that would allow him to edit and save documents without connecting to the internet. J.A. 15. The device was consistent with prison regulations and presented no security issues. *Id.* It had been recommended by a doctor and he explained he would order it and pay for it himself if required. *Id.* Defendants did not deny this accommodation on the grounds of any security or practicality concerns but instead on the basis that he should use his tablet to access analogous programs. *Id.* These programs, however, do not exist on the tablet. *Id.* Symmes therefore plausibly alleged that the accommodation offered of a nonexistent program on his tablet was not reasonable.

Finally, at this early stage, Symmes has sufficiently alleged deliberate indifference to his rights under the ADA to proceed under a damages theory. *See Basta v. Novant Health Inc.*, 56 F.4th 307, 316 (4th Cir. 2022). Symmes repeatedly put Defendants on notice of his need for a writing device and they responded by invoking a technology program that did not exist and that some Defendants *knew* did not exist. J.A. 15. Taken together, these allegations support an inference that officials knew an effective accommodation was needed and consciously failed to provide one. At a minimum, any deficiency in the damages allegations would not itself justify dismissing his request for an accommodation. See J.A. 17.

## II. The District Court Erred in Dismissing the ADA Claim on Pre-Service Screening with No Leave to Amend.

The district court's analysis of the ADA was one sentence long, followed by a string citation. J.A. 5. The court wrote, "Even assuming plaintiff suffers from a qualifying disability, he does not state a claim under the ADA, because he has not alleged discrimination based on disability." J.A. 5. The court cited three of this Court's cases; the selection of the cases and the content of their parentheticals is the closest thing Appellant has to a basis for the district court's decision. *Id.* None of these three opinions support affirmance.

First, the court cited *Fauconier v. Clarke* for the holding that the plaintiff in that case stated an ADA claim because defendants expressly denied him benefits on the grounds of his disability, forbidding him from working a prison job because of a medical issue. 966 F.3d 265, 277 (4th Cir. 2020). Intentional discrimination (i.e., disparate treatment on the basis of disability) is one form of disability discrimination. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 n.5 (4th Cir. 2016). But the failure to accommodate (i.e., the same treatment when a disability necessitates disparate treatment to facilitate equal access) is another. *Id.* That the plaintiff in *Fauconier* stated a claim by alleging disparate treatment in no way suggests that Symmes failed to do so when he alleged a failure to accommodate.

Second, the court cited *Baird ex rel. Baird v. Rose* for the holding that a plaintiff bringing an ADA claim must show that he was discriminated against "solely

on the basis of [his] disability." 192 F.3d 462, 469 (4th Cir. 1999). The court's invocation of *Baird* is wrong in two different ways. First, the parenthetical is inaccurate. *Baird* expressly considered "solely on the basis of disability" as a causation standard and rejected it, writing that "the ADA does *not* impose a 'solely by reason of' standard of causation." *Id.* at 469 (emphasis added). Disability must be *a* factor, not the sole factor. *Id.* at 470.

More fundamentally, to the extent the district court required Symmes to show that officials intentionally singled him out *because* of his disability, it applied the wrong theory of causation. A failure to accommodate theory under the ADA does have a causation requirement, but not one that requires plaintiffs to show that defendants took the actions they did because of the plaintiff's disability. Instead, the plaintiff must allege that his disability—and, critically, defendants' inaction in failing to accommodate it—was a meaningful cause of his lack of meaningful access to prison programs. *See Koon v. North Carolina*, 50 F.4th 398, 405 (4th Cir. 2022). ADA plaintiffs do not need to show that defendants acted with animus or took any affirmative steps to discriminate against the disabled; disability law is violated even when facially neutral government actions cause government programs and services to become inaccessible to people with disabilities. *Alexander v. Choate*, 469 U.S. 287, 295 (1985) ("Discrimination against the handicapped was perceived by

Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect”).

Finally, the district court cited this Court’s unpublished opinion in *Goodman v. Johnson*, 524 F. App’x 887, 890 (4th Cir. 2013), for its statement that “[T]he ADA prohibits discrimination because of disability, not inadequate treatment for disability.” J.A. 5. The quotation mislabels its source, which is not this Court’s own conclusion but an approving quotation of the Ninth Circuit’s view in *Simmons v. Navajo County*, 609 F.3d 1011, 1021–22 (9th Cir. 2010). It is true, however, that this Court has articulated in unpublished opinions the rule that prisoners cannot use the ADA to bring cases that sound in medical malpractice, typically either citing the Seventh Circuit’s decision in *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996), or cases like *Simmons* that in turn rely on *Madigan*. This Court has not, however, adopted the rule in a binding opinion and should not here, both because the rule is wrong and because it does not apply to Symmes’s claim regardless.

*Madigan* reached its conclusion by using an outdated mode of statutory interpretation. Writing for the Seventh Circuit, Judge Richard Posner interpreted the ADA in the common-law style, creating “judge-made exceptions” to the plain statutory text in order to “avoid absurd[]” outcomes, and speculating about what Congress could “really have intended” the ADA to mean. *Id.* at 249. Today, of course, courts reject this approach. Courts do not invent exceptions based on policy

preferences and instead interpret statutes according to the ordinary meaning of their plain text. *See, e.g.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020) ("Nor is there any such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception. Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule."); *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2073 (2018) ("It is not our function to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have intended.") (internal quotation marks omitted); *Magwood v. Patterson*, 561 U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent.").

Since *Madigan*, the U.S. Supreme Court has made clear that the ADA, including in its application to prisons, is no exception to this approach. The Court held unanimously that prisons are "public entities" within the meaning of the ADA, and that the "programs, services, or activities" prisons offer, like "recreational 'activities,' medical 'services,' and educational and vocational 'programs,'" are all subject to the ADA's usual requirements. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).[2] The Court did so by parsing "the statute's language,"

[2] Notably, the majority of the opinion in *Madigan* was dedicated to the opposite conclusion: that the ADA could not apply to prisons because, although "[t]here is no express exclusion of jails and prisons," the court explained, "[j]udgemade exceptions

rejecting the intention of Congress as "irrelevant" in the face of "unambiguous statutory text." *Id.* at 209. The Court has also suggested that the failure of a prison to "accommodate [a prisoner's] disability-related needs" in, *inter alia*, its provision of medical care, would create liability under the ADA. *United States v. Georgia*, 546 U.S. 151, 157 (2006). These cases do not directly address the statement in *Madigan* that there is a distinction between failure to accommodate claims under the ADA and medical malpractice-type claims. But the decisions do illustrate the extent to which *Madigan* is out of step with the correct approach for interpreting and applying the ADA.

On that note, while several other courts have adopted the rule from *Madigan*, these same courts also carefully limit its application. Courts have made clear that the judicially created and atextual exception to the ADA applies only to claims brought specifically because of poor medical care. Courts err when they misidentify an allegation that a prison failed to accommodate a disability as an allegation that staff failed to cure an injury—a mistake that causes the unwritten exception to swallow the statute whole.

The Third Circuit, for example, addressed a prisoner with leg braces who brought an ADA claim alleging that he could not safely get in and out of a prison

---

to laws of general applicability are justified to avoid absurdity." 84 F.3d at 248–49 (citations omitted). In a unanimous opinion drafted by Justice Scalia, *Yeskey* relied on the plain text of the statute to conclude to the contrary. 524 U.S. at 209–10.

shower. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019). The district court dismissed his claim, citing *Madigan*. *Id.* at 290. The Third Circuit reversed, as "complaints about not being provided an accessible shower are not allegations of medical malpractice or disagreements about medical treatment. They are requests for reasonable accommodations so that inmates with disabilities can take a shower—just like able-bodied inmates." *Id.* at 291.

The Ninth Circuit has reversed district courts for making this same error several times in recent years. *See Morris v. California*, No. 21-16059, 2022 WL 2901730, at *1 (9th Cir. 2022); *Munoz v. California Department of Corrections and Rehabilitation*, 842 F. App'x 59, 62 (9th Cir. 2021); *Barker v. Osemwingie*, No. 20-15503, 2021 WL 5564625, at *1 (9th Cir. Nov. 29, 2021). This month in *Adom v. California Department of Corrections & Rehabilitation*, the court rejected a prison's argument, relying on *Simmons*, that the failures to provide diapers to an incontinent prisoner were "medical treatment choices" that therefore could not "form the basis of an ADA claim." No. 24-4756, 2026 WL 2639549, at *13 (9th Cir. Sept. 8, 2026). While the prison "argue[d] that diapers are medical treatment within the meaning of *Simmons* and thus outside of the scope of the ADA," it was "mistaken, as [the plaintiff] did not seek incontinence supplies to 'lessen' his incontinence." *Id.* "[T]o hold that the involvement of doctors, or the classification of accommodations as medical equipment, removes prison accommodations from the scope of the ADA

would undermine the Supreme Court's holding that Title II applies with full force to state prisons." *Id.*

The present case too is not within the purview of *Madigan*. A writing device does not "treat" nerve pain or spinal injuries, and a failure to provide one is not medical malpractice. It is no more medical treatment or less an accommodation than the installation of a wheelchair ramp outside a prison building or handrails in a shower. Instead, a writing device would have accommodated Symmes's disability by allowing him to write, thereby accessing the full services of the prison, just like a prisoner without such a disability, as the ADA requires.

Even if this Court believes there is some validity to the *Simmons* line of cases, this Court should dictate to trial courts the limits of this doctrine. *Salinas v. Com. Interiors, Inc.* 848 F.3d 125, 140 (4th Cir. 2017) (explaining widespread "confusion" with "our district courts … apply[ing] a variety of multifactor tests" absent controlling precedent from this Court, which therefore "set forth [its] own test for determining" the legal question). Trial courts have used *Bryant* and its progeny to abrogate the ADA in prisons and jails entirely in direct contravention of U.S. Supreme Court precedent. Some non-exhaustive examples:

- In *Koon v. North Carolina*, the Eastern District of North Carolina invoked the doctrine to rule against a plaintiff who sought a pass to go to the handicap

library. No. 5:16-CT-3301-FL, 2021 WL 1206579, at *5 (E.D.N.C. Mar. 30, 2021).[3]

- In *Thompson v. Pitt County Detention Center*, the district court invoked the doctrine to rule for a defendant on the ground that making a detainee with a back injury sleep on the floor is medical care, not a disability accommodation. No. 4:19-CV-114-FL, 2020 WL 6196255, at *2 (E.D.N.C. Oct. 22, 2020).
- In *Zelaya Sorto v. Doe*, the district court held that this doctrine covered "over-the-ear headphones." No. 5:18-CT-3242-FL, 2020 WL 5709249, at *6 (E.D.N.C. Sept. 24, 2020).
- In *Boyd v. Tesemma*, the district court held that giving a prisoner with a mobility impairment a defective cane for a year was merely "inadequate medical care" and therefore outside the scope of the ADA. No. 2:14-CV-196, 2016 WL 9211757, at *2 (E.D. Va. Jan. 12, 2016).
- In *Womble v. Patel*, the district court held that a prison's failure to provide batteries for a hearing-impaired prisoner was outside the scope of the ADA because it was "a claim of inadequate medical care." No. 5:26-CV-00053-MEO, 2026 WL 970247, at *3 (W.D.N.C. Apr. 9, 2026).[4]

---

[3] This Court affirmed while implicitly rejecting the district court's reasoning, as it reached the merits of the ADA claim and ruled for Defendants on deliberate indifference grounds. 50 F.4th 398 (4th Cir. 2022).

[4] *Womble* is currently pending on appeal.

A writing device for a prisoner who cannot handwrite because of nerve pain is a disability accommodation, not medical treatment (adequate or otherwise). So too a bottom-bunk pass, a hearing aid battery, a functioning cane, over-the-ear headphones, and a pass to the handicap library. All of the above cases, like this one, were *pro se* before the district court. In these uncounseled cases, a judicially invented "exception" has swallowed Title II of the ADA in prisons and two unanimous U.S. Supreme Court opinions interpreting it. This Court should clarify that this free-floating and policy-based interpretation of the ADA must yield to the plain meaning of the statute's text.

Finally, even if the district court's ruling were correct, it erred by failing to provide Symmes even a single opportunity to amend his complaint. J.A. 5 (dismissing Symmes's complaint without leave to amend and ordering the clerk to close the case). This Court in *Ostrzenski v. Seigel* quoted from Wright & Miller's definitive federal courts treatise at length about how rare it should be for a district court to dismiss an initial complaint absent leave to amend:

> A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in

> unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.

177 F.3d 245, 252–53 (4th Cir. 1999). Even if this Court believes that Symmes has not stated a claim, the district court clearly erred by failing to give him an opportunity to amend without any futility analysis.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed and the case should be remanded for service and further proceedings.

Respectfully submitted,

*/s/ Samuel Weiss*

September 28, 2026

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume, typeface, and type-style requirements of Rule 32(a) of the Federal Rules of Appellate Procedure. This brief contains 6,384 words excluding the parts of the document exempted by Fed. R. App. P. 32(f), as calculated in Version 15.26 of Microsoft Word for Mac 2016. It was prepared in 14-point font using Times New Roman, a proportionally spaced typeface. The text of the electronic brief is identical to the text of the paper copies. A virus detection program was run on the file and no virus was detected.

/s/ *Samuel Weiss*
Samuel Weiss

## CERTIFICATE OF SERVICE

I certify that on September 28, 2026, I electronically transmitted the foregoing brief to the Clerk of the Court using the appellate CM/ECF System, causing it to be served on counsel of record, who are all registered CM/ECF users.

/s/ *Samuel Weiss*
Samuel Weiss